**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**HELENE ANNE COHAN,**

        **Plaintiff,**

**-vs-**                                          **Case No. 6:10-cv-719-Orl-35DAB**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

_____

# Memorandum Opinion & Order

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying her claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case. Oral argument has not been requested.

For the reasons that follow, the decision of the Commissioner is **REVERSED and REMANDED.**

## I.    BACKGROUND

### A.    Procedural History

Plaintiff filed for a period of disability, DIB and SSI benefits on January 26, 2007, alleging an onset of disability on October 22, 2006, due to affective/mood disorder, back pain, and chronic obstructive pulmonary disease. R. 95, 141-47, 227, 232. Her application was denied initially and upon reconsideration. R. 149, 158. Plaintiff requested a hearing, which was held before

Administrative Law Judge Douglas W. Abruzzo ("ALJ Abruzzo") on June 30, 2008 (R. 88-140, 197) and continued until a second hearing May 8, 2009.  R. 51-87.  However, the twenty-page decision dated October 5, 2009, by a different ALJ, Chester G. Senf ("ALJ Senf"), found Plaintiff not disabled as defined under the Act through the date of the decision.  R. 28-48.  Plaintiff timely filed a Request for Review of the ALJ's decision.  R. 10.  The Appeals Council denied Plaintiff's request on March 12, 2010.  R. 1.  Plaintiff filed this action for judicial review on May 7, 2010.  Doc. No. 1.

### B.     Medical History and Findings Summary

Plaintiff was born on January 20, 1953 (R. 227), completed college (R. 265), and previously worked as a mental health counselor and teacher's aide.  R. 257.

Plaintiff's lengthy medical history is set forth in detail in the ALJ's decision.  By way of summary, Plaintiff complained of affective/mood and anxiety disorders, back pain, and COPD.  R. 141-47, 259, 305, 343, 356.  After reviewing Plaintiff's medical records and Plaintiff's testimony, ALJ Senf found that Plaintiff suffered from low back pain secondary to L5 fusion and degeneration; neuropathic pain secondary to a motor vehicle accident and degeneration; and depression (substance induced), which were "severe" medically determinable impairments, but she did not have an impairment severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.  R. 30.  ALJ Senf determined that Plaintiff retained the residual functional capacity ("RFC") to perform a wide range of light work, limited to occasional crouching or crawling, avoiding climbing ropes or scaffolds and ladders exceeding 6 feet and heights, and occasional push and pull with her lower extremity and overhead reaching, with other environmental limitations.  R. 31-32.

In making this determination, ALJ Senf states in the decision that he found Plaintiff's symptoms of pain to be unsupported[1].  R. 41.  Based upon Plaintiff's RFC, ALJ Senf determined that

---

[1] Plaintiff's testimony regarding pain was heard at the hearings which were before ALJ Abruzzo.

she could not perform past relevant work. R. 44. Considering Plaintiff's vocational profile and RFC, ALJ Senf applied the Medical-Vocational Guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2, and, based on the written responses to interrogatories (written by ALJ Abruzzo) to the vocational expert ("VE"), ALJ Senf concluded that Plaintiff could perform work existing in significant numbers in the national economy. R. 44. Accordingly, ALJ Senf determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision. R. 48.

Plaintiff now asserts five points of error. First, she argues that she did not receive a fair hearing before an impartial ALJ. Second, she contends that the ALJ's decision must be reversed because the Office of Disability Adjudication and Review did not comply with the Commissioner's own regulations contained in HALLEX I-2-8-40. Third, Plaintiff contends the ALJ erred in failing to apply the correct legal standards to Plaintiff's limitations in concentration, persistence, and pace. Fourth, she argues that the ALJ erred in evaluating her prescription medication usage. Fifth, she asserts that the ALJ erred by improperly applying the pain standard. Because the Court finds that Plaintiff was denied due process by virtue of having ALJ Senf sign the unfavorable decision denying her claim, even though ALJ Abruzzo heard her testimony (twice) and should have made the credibility determination, the decision of the Commissioner is **REVERSED and REMANDED** on this issue.

## II.     STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th

Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f).

## III. ISSUES AND ANALYSIS

*A. Prejudice issues*

Plaintiff contends that the ALJ's decision must be reversed because the Office of Disability

Adjudication and Review did not comply with the Commissioner's own regulations when ALJ Senf signed the unfavorable decision denying her disability claim, even though ALJ Abruzzo conducted the administrative hearing and heard Plaintiff's testimony. Plaintiff argues that the "re-assignment" violated the Social Security Administration's own requirements spelled out in the Hearing, Appeals and Litigation Law Manual ("HALLEX") I-2-8-40[2]. R. 22. Plaintiff contends that there is no indication that the HOCALJ assigned Plaintiff's case to another ALJ, or that Judge Senf is a HOCALJ, and has the authority to sign the decision in the absence of ALJ Abruzzo. The Commissioner contends that "HALLEX makes it clear that a new hearing is not required" and the "signing of the decision by ALJ Senf for ALJ Abruzzo" did not prejudice Plaintiff.

Under HALLEX I-2-8-40, when an ALJ who conducted a hearing in a case is not available to issue the decision because of death, retirement, resignation, illness, or "other cause resulting in prolonged leave of twenty or more days," the Hearing Office ALJ (HOCALJ) will reassign the case to another ALJ. The ALJ to whom the case is reassigned will review the record and determine whether or not another hearing is required to issue a decision as follows:

> - If the ALJ is prepared to issue a fully favorable decision, another hearing would not be necessary.
>
> - If the ALJ is prepared to issue a less than fully favorable decision, another hearing may be necessary. For example, another hearing would be necessary if . . . the claimant alleges disabling pan, and the ALJ believes the claimant's credibility and demeanor could be a significant factor in deciding the case.

R. 22. Alternatively, if the ALJ has reviewed the final decision draft but is unavailable to sign the final decision, the HOCALJ has the authority to sign the final decision/order on behalf of the unavailable ALJ, if the ALJ gave the HOCALJ prior affirmative written authorization to sign the decision/order for the ALJ, which must be in an email or fax or other writing and signed with a "wet"

---

[2]SSA Office of Disability Adjudication and Review, Hearings, Appeals and Litigation Law Manual (HALL EX) § I–2–8–40 ("Administrative Law Judge Conducts Hearing but is Unavailable to Issue Decision"). *See* http://www.ssa.gov/OP_Home/hallex/I–02/I–2–8–40 html (last updated May 16, 2008). *See* R. 22 & Doc. 12-1.

signature (for non-email); a rubber stamp or other mechanical signature is not accepted or authorized under any circumstances. *See* HALLEX I-2-8-40.

As an initial matter, ALJ Senf's signature does *not* say it was "signed for" ALJ Abruzzo, and there is no explanation whatsoever in the decision or even a footnote explaining ALJ Senf's involvement or his status. Second, under HALLEX, *only* the Hearing Office Chief ALJ may "sign for" an absent ALJ on the final decision/order *only* if the assigned ALJ (1) "approved a final decision draft but is unavailable to sign the final decision" and (2) provides "prior affirmative written authorization to sign the decision/order for the ALJ" with a statement that the ALJ has read the decision/order and agrees with it (or includes changes) and the HOCALJ is authorized to sign it. R. 22. The signature must read: "HOCALJ John Doe for ALJ Jane Smith." R. 22. ALJ Senf did not sign the decision in Plaintiff's case as "HOCALJ," nor does the Commissioner argue that he is the HOCALJ; he also did not "sign for" ALJ Abruzzo, listing his own electronic signature without further explanation.

A recent district court decision considering an appeal arguing the binding nature of the HALLEX guidelines described the state of the law as follows:

> Courts have taken different approaches regarding the authority of HALLEX generally. *See Moore v. Apfel*, 216 F.3d 864, 864, 868 (9th Cir. 2000); *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000). In *Newton*, a claimant argued that the Commissioner's failure to consider new evidence on appeal, as ostensibly required by a certain provision of HALLEX, warranted vacatur and remand. *Newton*, 209 F.3d at 459-60. In response, the Fifth Circuit determined that where the rights of individuals are affected, an agency must follow its own procedures, even where the internal procedures are more rigorous than otherwise would be required. *Id*. at 459 (quoting *Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir. 1981)) The court in *Newton* concluded that the result cannot stand if the claimant is prejudiced by the Commissioner's failure to follow HALLEX guidelines. In contrast, the Ninth Circuit determined that HALLEX is strictly an internal guidance tool, providing policy and procedural guidelines to ALJ's . . . and therefore does not carry the force and effect of law. *Moore*, 216 F.3d at 868. Relying on this finding, the court in *Moore* refused to review allegations of noncompliance with the HALLEX guidelines. *Id*. at 869. A court in the Eastern District of North Carolina has likewise determined that HALLEX is an internal guidance tool that lacks the force of law. *Melvin v. Astrue*, 602 F.Supp.2d 694, 704 (E.D. N.C. 2009).

> In *Melvin*, the district judge found that HALLEX, like other kinds of administrative resources designed primarily for internal use, does not have the force of law. *See Melvin v. Astrue*, 602 F.Supp.2d 694, 704 (citing *Schweiker v. Hansen*, 450 U.S. 785, 789, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981) (SSA Claims Manual "has no legal force," and does not bind the agency); *Christensen v. Harris County*, 529 U.S. 576, 587, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000) (holding that agency interpretations contained in "policy statements, agency manuals, and enforcement guidelines[ ] all . . . lack the force of law")). This Court agrees. Although addressing a different HALLEX provision, *Melvin* specifically rejected the argument that remand was required by the district court where the claimant asserted that SSRs, ARs, and HALLEX had not been adhered to and the decision was not adequately explained. *Melvin*, 602 F.Supp.2d at 702-03. With respect to each, the court determined that these internal authorities did not have the force of law. Similarly, the amount of deference the district court may attribute to any given source of internal guidance was found not to be determinative. *Melvin*, 602 F.Supp.2d at 702-03.

*Overcash v. Astrue*, 2011 WL 815789, *6-7 (W.D. N.C. Feb. 28, 2011).

The Eleventh Circuit has declined to find that this specific provision, HALLEX I-2-8-40, carries the force of law. *See George v. Astrue*, 338 Fed. Appx. 803 (11th Cir. 2009) ("even if we assume that § I-2-8-40 of HALLEX carries the force of law–a very big assumption–the ALJ did not violate it"); *see also Tarver v. Astrue,* No. CA 10-0247-C, 2011 WL 206217, *3 (S.D. Ala. Jan. 21, 2011) ("there is uncertainty-based on a split among the Courts of Appeals, as well as between the District Courts in the Eleventh Circuit-as to whether or not that HALLEX creates judicially-enforceable rights"). However, even if such rights are arguably enforceable, remand is required only if the ALJ (or AC) violates the procedures in the HALLEX and only if the violation prejudices the claimant. *Tarver,* 2011 WL 206217, at *3.

The Commissioner contends that courts have recognized that in certain situations an ALJ may issue or sign a decision even if he or she did not conduct the hearing, citing *George v. Astrue*, 338 Fed.Appx. 803, 804-05 (11th Cir. 2009) (citing *Shave v. Apfel*, 238 F.3d 592, 596-97 (5th Cir. 2001)). In *George* and *Shave*, the appellate courts held that the signing ALJ did not have to hold a new hearing where the ALJ's rejection of the claimants' credibility was based, not on the their demeanor or a factor that could be observed in a live hearing, but on the conflict between the claimants'

-7-

statements about the limiting effects of their conditions and the objective medical evidence. *George*, 338 Fed. Appx. at 805 ("[T]he ALJ's decision was based on evidence from the existing record and the transcript from the hearing, and a second hearing would not have added in any meaningful way to the record."); *Shave*, 238 F.3d at 596-97 (the ALJ's limited rejection of claimant's credibility was not based on his demeanor or any other factor that would be better observed in a live hearing, but upon controverting and overwhelming medical evidence to the contrary). Accordingly, the signing ALJ in those cases did not err by failing to hold a new hearing after the original ALJ became unavailable.

The Commissioner concedes that, even where courts have held that failure to follow the exact procedures in HALLEX does not require reversal, courts will remand if there is a showing of prejudice to the Plaintiff. Doc. 13 (citing *Newton* and *Moore*). Courts considering the impact of HALLEX I-2-8-40, in situations where one ALJ has "signed for" another ALJ who presided over the hearing but has become unavailable, have considered whether the plaintiff has been prejudiced; if there is no suggestion of prejudice, these courts have held that "the court [should] not vacate the decision simply so that the [original] ALJ can sign it personally." *See, e.g., Pehrson v. Social Sec. Admin. Comm.*, __ F. Supp. 2d __, 2011 WL 2650187, *3 (D. Me. 2011) (declining to reverse decision where the Commissioner represented at oral argument that the ALJ simply signed for the unavailable ALJ who had held the administrative hearing and had actually written the decision); *Kendall v. Astrue*, No. 09-239-GWU, 2010 WL 1994912, *4 (E.D. Ky. May 19, 2010) (finding no prejudice to plaintiff where the hearing decision indicated the presiding ALJ at hearing had written the decision and the signing ALJ "signed for" the presiding ALJ; "the implication of such a format of signature is that the hearing decision had been prepared by" the presiding ALJ and was signed in his absence).

The Commissioner concedes that "the specific HALLEX provision may not have been followed," but contends that "the context of the decision reflects that ALJ Abruzzo drafted and prepared the decision and that ALJ Senf merely signed it," even though the Commissioner concedes that the record does not contain any indication that the HOCALJ reassigned this case from ALJ Abruzzo to ALJ Senf. Doc. 13.

The Commissioner bases his lack of prejudice argument in this case on his unsupported assertion that ALJ Abruzzo drafted the "lengthy, comprehensive written decision" that "more than adequately evaluated Plaintiff's claims." Doc. 13. The Court finds the facts of this case are different from the facts of those cases cited above finding no prejudice, and, here, Plaintiff *was* prejudiced by ALJ Senf signing the lengthy opinion and inconsistent opinion – without any explanation – when the ALJ's credibility determination specifically relied on observations of Plaintiff's demeanor at the hearing. The body of the decision specifically refers to observations about Plaintiff's conduct at the hearing in support of his finding that she lacked credibility with regard to her symptoms and the limiting effect of her pain. ALJ Senf's decision states: "The claimant did not appear in gross mental or physical stress at the hearing, insofar as lay observation could indicate" and "[s]he did not present supportive testimony at the hearing." R. 41-42. In the same paragraph, the ALJ found Plaintiff "was not completely believable"; "the symptoms of continued pain are unsupported"; and "based on the totality of these combined discrepancies, the claimant's veracity is not fully established." R. 41-42.

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). The references to observations made at the hearing in the decision would indicate that the author was present at the hearing, however, there is nothing in the record to indicate ALJ Abruzzo is the author. If an ALJ was present at the hearing and wrote

the final draft opinion, under the second provision in HALLEX I-2-8-40, the HOCALJ should have signed the decision "for" ALJ Abruzzo who conducted the hearing and should have indicated his title (HOCALJ) on the signature page.  ALJ Senf did not sign "for" ALJ Abruzzo, nor is there any indication that he is the Chief Administrative Law Judge.  Alternatively, ALJ Senf could have authored the opinion based on the paper record, but he should not have discounted Plaintiff's credibility based her demeanor at a hearing where he was not present to observe it.

What is also prejudicial to Plaintiff and compounds the problem of figuring out the authorship of the decision is a discussion of "pain behaviors":

> In psycho-medical literature, "pain behaviors" refers to a form of communication; things people do or say to communicate their suffering to other people. Pain behaviors can manifest in many ways and may include constant or intermittent moaning, groaning, rubbing the affected body part, grimacing, limping, or constantly changing positions.  Often these behaviors stem from a need to persuade others the pain and suffering is real.  Thus, pain behaviors can manifest whether the pain is "genuine" (organically caused) or "subjective" (organically caused but exaggerated or emotionally caused by expressed as organic) or "factitious" (intentionally falsified). People who are in genuine or subjective pain may fall into a pattern of continually calling attention to their suffering by pain behaviors, generally to no real advantage and often to their own detriment.  Other persons may respond in an overly solicitous manner, which reinforces the "disability" of the person in pain by encouraging more pain behaviors and less physical activity (without any real change in physical condition).  Conversely, other persons may respond with frustration, resentment or hostility which also encourages more pain behaviors and less physical activity as it reinforces the need to persuade others (without any real change in physical condition). Thus, pain behaviors are widely regarded as "maladaptive" in these populations, in that they serve no real purpose and can be very detrimental.  On the other hand, persons with factitious pain generally have a primary goal related to relationships (*e.g.*, attention, sympathy, nurturing) or circumstances (e.g., leniency or release from duties or punishment) or finances (*e.g.*, disability benefits) that person finds otherwise unattainable.  People whose factitious pain relates to relationships may have a true mental/emotional disorder expressed in their pain behaviors (*e.g.* Munchausen Syndrome), whereas people whose factitious pain relates to circumstances or finances have a reality-based and goal-oriented motivation for their pain behaviors (*e.g.*, malingering).
>
> \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
>
> > In the pain literature, the language of pain is often referred to as "pain behaviors."  In general, pain behaviors are things that people do or say to let others around them know they are suffering.  Often these

-10-

> behaviors stem from a need to inform others that the pain is real and the suffering genuine.  Pain behaviors can manifest in many ways and may include constant or intermittent moaning, groaning, rubbing the neck or back,
> 4 what is chronic pain? [sic]
> grimacing, limping, or constantly changing positions.  People who are in pain often fall into a pattern of continually calling attention to their suffering, to no real advantage and often to their own detriment.  For example, a person who moans frequently in response to pain does not change the physical experience.  But he moaning my cause a spouse to respond in either an overly solicitous manner or with hostility and resentment. Both responses tend to have negative effects on the person in pain and on the relationship in general.  The overly solicitous spouse who constantly responds in a supportive and loving way to pain behaviors reinforces the disability of the person in pain and can even encourage more pain behaviors and less physical activity – all without a real change in the physical condition.  At the other extreme, when a spouse becomes frustrated, resentful or even outwardly angry, the effect on the person in pain and other family members who witness this breakdown in the relationship can be disastrous.
> Pain behaviors are widely regarded as "maladaptive," meaning they serve no real purpose and can be very detrimental.  it's critical for people in pain and their family members to recognize these behaviors and to work to change them.  Effective communication comes not in the persistent moaning of r someone in pain but rather in honest and loving communication.

R. 32-33 (error in original).  There is a lengthy description in the decision of the "psycho-medical literature" about "pain behaviors."  There is no citation or attribution for the source of this "psycho-medical" literature and it is not from the Social Security Regulations or any case law.  Moreover, the formatting is rather hodge-podge, with an indented section plunked down in the middle of the text - containing an error – and gives the appearance the decision was somehow cobbled together.

After a lengthy synopsis of Plaintiff's statements on SSA forms, and a summary of each of the treating, consulting, and reviewing physicians records, the decision states:

> Based on the totality of these combined discrepancies, the claimant's veracity is not fully established, and should not preclude the physical or mental exertion described above. The claimant asserts a number of seemingly disabling impairments and reports symptoms which the claimant feels are so disruptive to normal functioning as to render the claimant unable to consistently perform any work functions at all.  The medical records show diagnoses and medical opinions of varying consistency and credibility, but the medical evidence overall does indicate the existence of impairments . . .[T]he

-11-

> dispositive question is whether such symptoms exist with such frequency, intensity and persistence to essentially eliminate the claimant's physical and/or mental capacity to perform the duties of any occupation existent in the national or local economy. The totality of the evidence in this case does not rise to such a level.

R. 42.

The decision also lists the criteria for the relevant listings for Plaintiff's conditions of degenerative disc disease, affective disorders, depressive syndrome, manic syndrome, and bipolar syndrome, but contains no analysis whatsoever. The decision merely states repeatedly that "the claimant does not meet" each Listing. R. 41-43. Even though the decision sets forth the Listing for substance addition disorders (Listing 12.09), there is no application of the criteria to Plaintiff's circumstances.

Instead, and lending to the piecemeal air of the decision, is the strange placement of the discussion of substance abuse or alcoholism in disability determination, which is appended at the end of the decision in the context of the Fifth step. Following a discussion of whether there was other work in the national economy Plaintiff could perform – which is generally the final section of the decision because it concerns the Fifth and last step – are two pages of discussion about the countervailing standards in the circuit courts (R. 46-47) on the substance abuse determination, but there is no application to Plaintiff's conditions or particular discussion of her situation.

ALJ Senf's decision in this case is not in accord with the requirements of HALLEX I-2-8-40. The decision does not clearly indicate it was reassigned or "signed for" ALJ Abruzzo by the HOCALJ, and yet it relies on Plaintiff's demeanor at the hearing to discount her credibility. More importantly, Plaintiff is prejudiced by this failure to follow the HALLEX requirements in that the credibility determination and the substance abuse discussion, as well as the reliance on "pain behaviors" from the "psycho-medical literature" is not supported by substantial evidence.

On this record, there is no way for the Court to determine the provenance of the decision under review. Because applicable administrative procedures were not followed, a mystery remains: either

a decision was prepared by an ALJ who did not conduct the hearing, or the decision signed for some unspecified reason by an ALJ with no apparent authority in the matter. The structural and analytical defects in the decision heighten the irregularity. Given these unanswered questions, there is simply not a proper agency decision before the Court. The Court cannot conduct its prescribed function of deferential review in the absence of a properly rendered decision.

On remand, the assigned ALJ will be required to conduct a new hearing and to apply the Eleventh Circuit's pain standard[3] and that of the SSA in considering Plaintiff's testimony of pain and other symptoms. If the ALJ considers substance abuse issues, he will also apply the Eleventh Circuit's decision in *Doughty v. Apfel*, 245 F.3d 1274 (11th Cir. 2001) (claimant bears the burden of proving whether he would be disabled if he stopped using drugs and alcohol).

*B. Other issues*

Plaintiff contends that she did not receive a fair hearing before ALJ Abruzzo, based on a posting on the National Public Radio website reportedly by ALJ Abruzzo to the effect that there are some claimants who falsify their symptoms, with the assistance of their physicians and attorneys, in order to obtain disability benefits. R. 12. Plaintiff also contends that there exists SSA statistical information suggesting ALJ Abruzzo's approval rate is "far below" that of other administrative law judges. R. 13. Given the unique circumstances of this case and the way in which the decision was constructed, the Court will require on remand that Plaintiff's case be assigned to ALJ Senf or to an ALJ other than ALJ Abruzzo. *See King v. Commissioner of Soc. Sec.*, 2008 WL 4905493 (M.D. Fla. Oct. 8, 2008) (remand to a different ALJ may be an appropriate remedy, even without an express finding of bias) and cases cited therein.

---

[3]The ALJ must apply the Eleventh Circuit's three-part "pain standard" which requires: (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. *Foote*, 67 F.3d at 1560 (quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)).

Plaintiff also contends that the ALJ did not apply the correct legal standards to Plaintiff's limitations in concentration, persistence, and pace, noted to be moderately limited by two state agency consultants, who also found that Plaintiff was "moderately limited" in the ability to complete a normal workday and work week without interruptions and to perform at a consistent pace without an unreasonable number and length of rest periods.  R. 467, 616.  On remand, the ALJ will be required to analyze Plaintiff's limitations, and include these limitations in any hypothetical questions to the VE, consistent with the Eleventh Circuit's analysis in the decision in *Richter v. Commissioner of Social Security*, No. 09-12674, 379 Fed.Appx. 959, 961-62 (11th Cir. 2010) (unpublished) (ALJ cannot generally account for a claimant's deficiencies in concentration, persistence, and pace by restricting the vocational expert's inquiry to simple, routine tasks or unskilled work unless the medical evidence demonstrates that a claimant retains the ability to engage in simple, routine, repetitive tasks or unskilled work despite deficiencies in concentration, persistence and pace and these restriction sufficiently account for such deficiencies).

## IV. CONCLUSION

For the reasons set forth above, the Commissioner's decision is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g).  The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on July 29, 2011.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record